UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | |
|---|---|
| LEYTH O. JAMAL, § | |
| § | |
| Plaintiff § | |
| § | |
| v. § | |
| § | |
| SAKS & COMPANY § | |
| § | CASE NO. |
| § | |
| § | |
| Defendant. § | JURY DEMAND |

**PLAINTIFFS' ORIGINAL COMPLAINT**

TO THE HONORABLE UNITED STATES DISTRICT JUDGE OF SAID COURT:

COME NOW, LEYTH O. JAMAL, Plaintiff herein, complaining of SAKS & COMPANY (hereinafter referred to as "Saks"), Defendant herein, and in support would show the Court as follows:

**I.**

**NATURE OF THE CASE**

1. This is an action under Title VII of the Civil Rights Act of 1964, 42 U.S.C. 2000e *et seq.* and Title I of the Civil Rights Act of 1991, 42 U.S.C. § 1981a *et seq.* for unlawful employment practices based on sex and disability. Additionally, this action arises under Texas common law for breach of contract.

2. Plaintiff Leyth O. Jamal ("Ms. Jamal") alleges that Defendant, Saks, subjected Ms. Jamal to discrimination based on her sex and disability.

1

## II.

## JURISDICTION AND VENUE

3. This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1331 because the action is based on Title VII, 42 U.S.C. § 2000e, *et seq.*, a federal statute, pursuant to 28 U.S.C. § 1337 because the action is based on a federal statute regulating commerce, and pursuant to 28 U.S.C. § 1343 because the action is based on deprivation of the Plaintiff's right under color of state law as against a federal law providing for equal rights.

4. This Court has supplemental jurisdiction pursuant to 28 U.S.C. §1367 because the Texas common law claims form part of the same case or controversy under Article III of the United States Constitution.

5. This Court also has jurisdiction pursuant to 28 U.S.C. § 1332, in that Defendant is a citizen of the State of Massachusetts, and Plaintiff is a citizen of the State of New York, and the amount in controversy, exclusive of interest and costs, exceeds $75,000.00.

6. Venue is proper in the United States District Court for the Southern District of Texas pursuant to 28 U.S.C. §§ 1391(b)(2) because a substantial part of the unlawful employment practices are alleged to have been committed in Houston, Harris County, Texas, located within the United States District Court for the Southern District of Texas.

7. The United States District Court for the Southern District of Texas is the proper forum in which to litigate the claims of Plaintiff because Defendant has a physical presence in Houston, Harris County, Texas, and Ms. Jamal has performed all relevant work for Saks at that location.

## III.

## THE PARTIES

8. Plaintiff Leyth Jamal is a female citizen of the United States and a resident of Bronx, New York.

9. Ms. Jamal was originally hired by Saks as a Selling Associate at its Saks Off 5th outlet store in Katy, Texas on or around April 24, 2011 and was transferred to Saks's full-line store in Houston, Harris County, Texas on or around March 26, 2012.

10. Defendant, Saks, is incorporated in the State of Massachusetts and registered to do business in the State of Texas.

11. Saks, at all relevant times, operated its full-line store location in Houston, Harris County, Texas, and, upon information and belief, has continuously had at least 500 employees during the relevant time periods.

12. At all relevant times, Saks has continuously been an employer engaged in an industry affecting commerce within the meaning of Sections 701(b), (g) and (h) of Title VII, 42 U.S.C. §§ 2000e (b), (g) and (h).

## IV.

## ADMINISTRATIVE PROCEDURE

13. Plaintiff submitted a charge of discrimination, EEOC Charge No. 460-2012-02905, against Defendant to the Equal Employment Opportunity Commission ("EEOC), Houston District Office, on July 2, 2012, requesting an investigation based on sex discrimination.

14. The EEOC charge was thereby dual filed with the Texas Workforce Commission Civil Rights Division on the same date.

15. On July 21, 2012, Plaintiff amended to her EEOC charge to include retaliation because she had been terminated ten days after filing her original charge.

16. The EEOC sent a letter of determination to Ms. Jamal on February 12, 2014, which stated: "Based upon the evidence, the Commission concludes that Charging Party was subjected to intimidation and harassment based on sex (male), and because of failure to conform to stereotypical male behavior in the workplace, in violation of Title VII.  Further, the Commission concludes that Respondent has an unlawful policy or practice which denies employees access to restroom facilities consistent with their gender identity, in violation of Title VII."

17. Conciliation failed, and the EEOC sent a Notice of Right to Sue on July 9, 2014.

18. All conditions precedent to the institution of this lawsuit have been fulfilled.

19. Plaintiff has exhausted her administrative remedies as required by Title VII, 42 U.S.C. § 2000e *et seq.*

## V.

## FACTUAL ALLEGATIONS

20. Defendant engaged in unlawful employment practices at its full-line retail location in Houston, Harris County, Texas, in violation of Title VII, 42 U.S.C. § 2000e, *et seq.*, and the Texas common law as follows.

21. Leyth Jamal began working with Saks as a Selling and Service Associate on or about April 24, 2011 at Saks's Saks Off 5th outlet location in Katy, Texas.

22. Saks was aware of Ms. Jamal's non-traditional gender, gender identity, and gender expression at the time she was hired.

23. In January 2012, Ms. Jamal's job title was changed to Contemporary Sales Associate and her pay structure was changed to commission sales.

24. About a year after commencing work with Saks, Plaintiff applied for a Selling Associate position at Saks's Houston, Texas full-line store, where the volume of sales could dramatically increase her income potential.

25. After being interviewed, Ms. Jamal was offered a position at the Houston, Texas full-line store, which she accepted.  Ms. Jamal transferred on or about March 26, 2012.

26. At Ms. Jamal's employee orientation, shortly after transferring to the Houston location, she spoke with Melissa Mullen, Manager of Women's Contemporary, and Carol Taylor, HR Manager, requesting to use the female restroom, and to be referred to using female pronouns. They said they would check store policy.

27. Ms. Jamal was required to use the men's restroom.  As a result, she was constantly misgendered with male references.

28. Misgendering is the practice of intentionally using incorrect gender referents (e.g. pronouns, titles, and names) in describing or conversing with a known transsexual or trans person.

29. Ms. Jamal alleges that the motivation behind the misgendering in her case is to communicate the belief that the subject is not truly a member of their post-transition gender and/or to express contempt for their gender identity and gender expression.

30. Shortly thereafter, Mullen confronted Ms. Jamal regarding a complaint that she had used the men's restroom.

31. Manager Carol Taylor asked Ms. Jamal to change her appearance to a more masculine one, stating that she should separate her home life from her work life.

32. Ms. Jamal was also told by management that she should not wear makeup or feminine-style clothing.

33. Management's lack of support of Ms. Jamal's gender, gender identity, and gender expression began to shape her interactions with her co-workers and managers, allowing many continued inappropriate comments by co-workers and managers over many months regarding Ms. Jamal's gender, gender identity, and gender expression.

34. For example, Daryll Smith, a Selling Associate, repeatedly asked, commented, and patronized Ms. Jamal in front of customers and colleagues. Among other things, he asked if she was a prostitute.

35. When Ms. Jamal became upset at Smith's comments, Smith said, "What is 'he' going to do?"

36. On one occasion, Smith got into a verbal altercation on the sales floor with Ms. Jamal in front of several co-workers.

37. He threatened to "beat Leyth up" and "rip out 'his' hair extensions."

38. Smith believed he could physically assault Ms. Jamal and continue to work at Saks because a previous physical altercation had happened in the past at Saks, and the associate was still allowed to work.

39. On a separate occasion, Ms. Nkuku told Cameron Chamblee, Selling Associate, regarding Ms. Jamal, "Well, I don't care for 'him' and appreciate the way 'he' acts and 'his' behavior towards everyone."

40. According to Mr. Chamblee, "[I] witness[ed] continuous verbal hostility and discrimination towards Leyth which in turn has directly affected 'his' sales performance in our work environment since the original date of hire."

41. In addition, Lauren Pray, Selling Associate, witnessed "Leyth having difficulty working due to a hostile work environment," "being harassed," "and also threatened."

42. Furthermore, Dandrea Richmond, Selling Associate, also witnessed the harassment and hostile environment that Ms. Jamal faced at Saks: "It starts throughout the store with management and trickles down to employees . . . . I have also seen 'him' be harassed by co-workers in instances where 'he' has been threaten [sic] to get 'his' 'ass' whipped after work . . . I have heard other employees slander 'his' name in front of other employees as well as clients which potentially hurts 'his' brand and clientele. . . .  In turn, I have seen this take a dramatic affect [sic] on 'his' health and 'his' financial well-being."

43. Ms. Jamal complained to store management about the harassment in writing, but no action was taken.

44. In response to her complaints, Ms. Jamal was accused of engaging in "disrespectful" conduct by walking away from co-workers who made such comments, and "rolling her eyes."

45. Ms. Jamal had one or two performance reviews, which indicated no problem with her work, and, in fact, she was told that she was the number two seller out of twenty employees, and that she was on her way to being a "million dollar seller."

46. Ms. Jamal was placed in certain departments and/or portions of departments known to generate lower sales, specifically to inhibit her sales.

47. There was no formal, documented discipline against Ms. Jamal of any kind.

48. On June 27, 2012, Ms. Jamal was accused by the store of having a conversation with a co-worker, with inappropriate content.

49. Ms. Jamal did not, in fact, have any conversations with inappropriate content.

50. Ms. Jamal made a complaint to the United States Equal Opportunity Commission on July 2, 2012, about harassment based on her gender, gender identity, and gender expression.

51. Ms. Jamal was terminated on July 12, 2012, ten days after bringing a complaint to the EEOC.

52. The basis for Ms. Jamal's termination was an alleged conversation with another associate that allegedly contained inappropriate content.

53. Ms. Jamal did not engage in any conversation with inappropriate content.

54. The employer's investigation of this alleged conversation was unreasonably, improperly, and recklessly performed.

55. The store's identification of Ms. Jamal was based on a conversation with a customer who had allegedly heard an inappropriate conversation between two associates. The store's investigation showed inconsistencies of fact and lack of factual detail such that Defendant could not have reasonably believed that Plaintiff was known to be the person who had participated in the alleged conversation.

56. Other co-workers on the floor did not hear any inappropriate conversation.

57. Ms. Jamal was terminated prior to the employer speaking to the other associate allegedly involved in the conversation.

58. The other associate, who was not in the protected category, was not terminated immediately, and was allowed to continue to work until on or about July 16, 2012.

59. Other employees not in the protected category had inappropriate conversations in front of customers, similar to those alleged to have occurred with Ms. Jamal.

60. These conversations were witnessed by Ms. Jamal and other store associates.

61. Store management was aware of these inappropriate conversations.

62. No action was taken against the other employees, whereas action was taken against Ms. Jamal for the same type of violation.

## VI.

## CAUSES OF ACTION

### COUNT 1:

**The Defendant Wrongfully Terminated Plaintiff Because of Her Gender, Gender Identity, and Gender Expression in Violation of Title VII of the 1964 Civil Rights Act and Title I of the Civil Rights Act of 1991.**

63. Plaintiff realleges and incorporates by reference all allegations in all preceding paragraphs 1–62.

64. The effect of Defendant's acts complained of above has been to deprive Ms. Jamal of equal employment opportunities as an employee because of her sex in violation of Title VII, 42 U.S.C. § 2000e, *et seq.*, and Title I of the Civil Rights Act of 1991, 42 U.S.C. § 1981a.

65. The reason given by Defendant for Ms. Jamal's termination was a pretext for sex discrimination and was not the true reason for her termination.

66. Defendant's termination of Ms. Jamal was because of animus based on her gender, gender identity, and gender expression.

67. Defendant acted intentionally, maliciously, and/or recklessly in terminating Ms. Jamal because of her gender, gender identity, and gender expression.

68. As a direct and proximate result of the acts complained of herein, Ms. Jamal has and will continue to suffer loss of compensation, wages, salary and bonuses, past benefits, future pecuniary losses, mental and emotional distress, humiliation, loss of reputation, loss of enjoyment of life, and other pecuniary and non-pecuniary losses.

69. By reason of the discrimination suffered by Plaintiff, Ms. Jamal is entitled to all legal and equitable remedies available under Title VII, 42 U.S.C. § 2000e, *et seq.*, and Title I of the Civil Rights Act of 1991, 42 U.S.C. § 1981a.

## COUNT 2:

### The Defendant Subjected Plaintiff to Harassment and a Hostile Work Environment.

70. Plaintiff realleges and incorporates by reference all allegations in all preceding paragraphs 1–62.

71. Ms. Jamal was subjected to harassment and a hostile working environment based on her gender, gender identity, and gender expression as detailed above.

72. This harassment and hostile working environment was severe, based on the nature of the harassment, including statements expressing animus towards her gender, gender identity, and gender expression during the 300 days prior to Ms. Jamal's EEOC complaint, and prior statements as part of a continuing course of conduct by Defendant and Defendant's managers and employees, about Ms. Jamal's gender, gender identity, and gender expression, and restrictions on her use of appropriate gender-conforming restrooms because of her gender, gender identity, and gender expression, all of which were designed to and were likely to humiliate her, and which did have that effect on Ms. Jamal.

73. This harassment and hostile working environment was pervasive during the 300 days prior to Ms. Jamal's EEOC complaint, based on the many incidents of harassment, including many daily statements about her gender, gender identity, and gender expression, and restrictions on her use of appropriate gender-conforming restrooms, as well as prior statements and restrictions as part of a continuing course of conduct by Defendant and Defendant's

managers and employees, all of which were because of Ms. Jamal's gender, gender identity, and gender expression.

74. The effect of the harassment and hostile working environment complained of above has been to deprive Ms. Jamal of equal employment opportunities and otherwise adversely affect her status as an employee because of her sex in violation of Title VII and Title I of the Civil Rights Act of 1991.

75. Defendant was on notice of said practices and hostile working environment because Defendant's managers, including Defendant's direct supervisors, participated in and witnessed said practices.

76. Defendant was on notice of said practices and hostile working environment because Plaintiff complained orally to Defendant's managers regarding said practices.

77. Defendant failed and refused to investigate and take prompt and effective action regarding said practices.

78. Defendant failed and refused to investigate and take prompt and effective action to stop the hostile working environment.

79. Ms. Jamal was threatened with and subjected to tangible employment actions and materially adverse employment actions by Defendant by being subjected to termination.

80. By creating, condoning and perpetuating a hostile work environment because of Ms. Jamal's gender, gender identity, and gender expression, Defendant has acted intentionally, maliciously, and/or recklessly.

81. As a direct and proximate result of the acts complained of herein, Ms. Jamal has suffered and will continue to suffer loss of compensation and benefits, mental and emotional distress,

humiliation, loss of reputation, loss of enjoyment of life, and other pecuniary and non-pecuniary losses.

82. By reason of the discrimination suffered by Plaintiff, she is entitled to all legal and equitable remedies available under Title VII, 42 U.S.C. § 2000e, *et seq.*, and Title I of the Civil Rights Act of 1991, 42 U.S.C. § 1981a.

### COUNT 3:

**The Defendant Retaliated Against Plaintiff for Filing Complaints of Discrimination with the Equal Employment Opportunity Commission.**

83. Plaintiff realleges and incorporates by reference all allegations in all preceding paragraphs 1–62.

84. The effect of Defendant's acts complained of above has been to deprive Ms. Jamal of equal employment opportunities as an employee because of retaliation for her complaints of discrimination in violation of Title VII, 42 U.S.C. § 2000e, *et seq.*, and Title I of the Civil Rights Act of 1991, 42 U.S.C. § 1981a.

85. By complaining to Defendant and Defendant's managers about the practices and hostile working environment complained of above, and bringing a complaint to the United States Equal Opportunity Commission, Ms. Jamal engaged in conduct protected by Title VII and Title I of the Civil Rights Act of 1991.

86. Following and because of Ms. Jamal's complaints, Ms. Jamal was threatened with and subjected to termination by Defendant.

87. These actions constitute tangible and adverse employment actions.

88. These actions were materially adverse to Ms. Jamal because they would dissuade a reasonable employee from making or supporting a charge of discrimination.

89. Defendant's termination of Plaintiff was because of retaliation for Plaintiff's complaints in the workplace and her filing of a complaint with the United States Equal Employment Opportunity Commission.

90. By engaging in the foregoing conduct, the Defendant has intentionally retaliated against Ms. Jamal with malice or reckless indifference to Jamal's federally protected rights to oppose practices that are prohibited by Title VII, 42 U.S.C. § 2000e, *et seq.*, and Title I of the Civil Rights Act of 1991, 42 U.S.C. § 1981a.

91. As a direct and proximate result of the acts complained of herein, Ms. Jamal has suffered and will continue to suffer loss of compensation and benefits, mental and emotional distress, humiliation, loss of reputation, loss of enjoyment of life, and other pecuniary and non-pecuniary losses.

## COUNT 4:

**The Defendant Breached its Employment Contract with Plaintiff by Failing to Comply with its Established Non-Discrimination Policy Which Prohibits Discrimination on the Basis of Gender.**

92. Plaintiff realleges and incorporates by reference all allegations in all preceding paragraphs 1–62.

93. Plaintiff entered into a contract of employment with Defendant, which was a valid contract at the time of the foresaid events.

94. Defendant offered to engage Ms. Jamal as a sales associate, which offer Ms. Jamal accepted.

95. When Ms. Jamal began her employment, she received an Employee Handbook, which contained certain representations as to benefits to be extended to Plaintiff, including representations that Defendant prohibited discrimination based on gender.

96. Ms. Jamal did all, or substantially all, of the essential things which the contract required her to do.

97. All conditions required by the contracts for Defendant's performance had occurred.

98. Consideration for these contracts included, but was not limited to Ms. Jamal's services as a sales associate in exchange for Defendant's payment and benefits therefor.

99. Defendant adopted the above outlined anti-discrimination policy prior to Ms. Jamal's commencement of employment with Defendant.

100. The said anti-discrimination policy was an essential term of the contracts.

101. Ms. Jamal accepted these terms offered by Defendant in exchange for the compensation and benefits offered by Defendant.

102. Ms. Jamal reasonably relied on the fulfillment of the Defendant's nondiscrimination policies when she requested that supervisors and colleagues use the appropriate pronouns, permit her to use appropriate gender-conforming restrooms, and made an attempt to make complaints about discriminatory treatment because of her gender, gender identity, and gender expression.

103. Defendant's repeated failure and refusal to use Ms. Jamal's appropriate gender pronouns, denial of use of appropriate gender-conforming restrooms for Ms. Jamal, retaliation for her complaints about discrimination, and termination due to Ms. Jamal's gender, gender identity, and gender expression and/or in retaliation for making complaints of discrimination, were material breaches of the essential terms of the contracts between Defendant and Ms. Jamal.

104. As a direct and proximate result of the acts complained of herein, Ms. Jamal has suffered and will continue to suffer loss of compensation and benefits, mental and emotional distress,

humiliation, loss of reputation, loss of enjoyment of life, and other pecuniary and non-pecuniary losses.

## PRAYER FOR RELIEF

**WHEREFORE,** Plaintiff Leyth O. Jamal respectfully requests the following relief:

A.  Grant a permanent injunction enjoining Defendant, its officers, successors, assigns and all persons in active concert or participation with Defendant, from engaging in discrimination based on gender, gender identity, or gender expression, retaliatory conduct, and/or any other employment practice which discriminates on the basis of gender, gender identity, and gender expression and/or opposition to an unlawful employment practice;

B.  Order Defendant to institute and carry out policies, practices, and programs which provide equal employment opportunities for all employees regardless of gender, gender identity, and gender expression, and which eradicates the effects of its past unlawful employment practices;

C.  Order Defendant to make Ms. Jamal whole by providing compensation for past and future pecuniary and economic losses resulting from Defendant's unlawful practices described above;

D.  Order Defendant to make Ms. Jamal whole by providing compensation for non-pecuniary losses resulting from the unlawful practices described above, including but not limited to emotional pain, suffering, inconvenience, loss of enjoyment of life, humiliation, loss of self-esteem, loss of civil rights and nominal damages, in an amount to be determined at trial;

E.  Order Defendant to pay Ms. Jamal punitive damages for its malicious and reckless conduct described above, in an amount to be determined at trial;

F. Order Defendant to pay Ms. Jamal's litigation costs and expenses, including reasonable attorneys' fees, and pre-judgment and post-judgment interest; and

G. Grant such further relief as the Court deems necessary and proper in the public interest.

## DEMAND FOR JURY

Plaintiff demands trial by jury of all issues of fact raised by its complaint.

Dated this 30 day of September, 2014.

Respectfully submitted,

KATINE & NECHMAN L.L.P

By:

*/s/ Mitchell Katine*
Mitchell Katine, Attorney In Charge
State Bar of Texas No. 11106600
Southern District of Texas Bar No.7700
Katine & Nechman, L.L.P.
1834 Southmore Blvd (Almeda Road)
Houston, Texas 77004
Telephone:   (713) 808-1000
Facsmile:    (713) 808-1107
Email:       mkatine@lawkn.com

ATTORNEY FOR PLAINTIFF

**PLAINTIFF'S ORIGINAL COMPLAINT**           16