UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS

| | |
|---|---|
| Leyth O. Jamal, ) | |
| ) | |
| Plaintiff, ) | |
| ) | Civil Action No. 14-2782 |
| v. ) | |
| ) | |
| SAKS & Company, ) | |
| ) | |
| Defendant. ) | |

**STATEMENT OF INTEREST
OF THE UNITED STATES OF AMERICA**

The Attorney General of the United States is charged with enforcing Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e *et seq.* ("Title VII"), where the employer is a state or local "government, governmental agency, or political subdivision." 42 U.S.C. § 2000e-5(f). Thus, the United States has a strong interest in ensuring the proper interpretation and application of Title VII in order to eliminate unlawful employment discrimination. Accordingly, the United States respectfully submits this Statement of Interest pursuant to 28 U.S.C. § 517.[1]

This Statement of Interest addresses the applicable scope of Title VII's prohibition of sex discrimination in employment, in light of Defendant SAKS & Company's ("SAKS") Motion to Dismiss ("Motion"), ECF No. 9. In that Motion, SAKS contends that Title VII's prohibition on sex discrimination does not protect transgender individuals. Both the text of the statute and case law interpreting it undercut that argument. Accordingly, both federal agencies charged with

---

[1] "The Solicitor General, or any other officer of the Department of Justice, may be sent by the Attorney General to any State or district in the United States to attend to the interests of the United States in a suit pending in a court of the United States, or in a court of a State, or to attend to any other interest of the United States." 28 U.S.C. § 517.

enforcing Title VII—the United States Department of Justice and the United States Equal Employment Opportunity Commission ("EEOC")—have determined that Title VII's prohibition of discrimination "because of…sex" necessarily proscribes discrimination because of transgender status.

The United States' position reflects the Attorney General's conclusion that "the most straightforward reading"—indeed "the best reading"—of "Title VII's prohibition of sex discrimination is that it encompasses discrimination based on gender identity, including transgender status." *See* U.S. Dep't of Justice Memorandum dated Dec. 15, 2014 ("DOJ Mem."), p. 2.[2] Thus, the Attorney General has determined that, "as a matter of plain meaning, Title VII's prohibition against discrimination 'because of…sex' encompasses discrimination founded on sex-based considerations, including discrimination based on an employee's transitioning to, or identifying as, a different sex altogether." *Id*. As demonstrated below, both the Attorney General's decision and a growing body of case law recognize this straightforward construction of Title VII. As the EEOC explains in its amicus brief, it has reached the same conclusion. In an April 2012 decision adjudicating a federal sector employment case, the EEOC held "that intentional discrimination against a transgender individual because that person is transgender is, by definition, discrimination 'based on . . . sex,' and such discrimination therefore violates Title VII." *Macy v. Holder*, 2012 WL 1435995, at *11 (EEOC April 20, 2012). That decision, too, is premised on both Title VII's text and cases interpreting that statute.

In light of the Attorney General's strong interest in ensuring the proper interpretation of Title VII, the United States files this Statement of Interest, setting forth its views regarding the

---

[2] Available at http://www.justice.gov/sites/default/files/opa/press-releases/attachments/2014/12/18/title_vii_memo.pdf (last accessed January 20, 2015) ("DOJ Mem.").

scope of Title VII's coverage with respect to claims of sex discrimination by transgender individuals. Because the complaint includes sufficient factual allegations that SAKS discriminated against Plaintiff Leyth O. Jamal ("Ms. Jamal") both because of her transgender status and because SAKS deemed Ms. Jamal as not conforming to gender-based stereotypes, the Court should reject the arguments regarding Title VII's coverage presented in SAKS' Motion to Dismiss.

I.   **RELEVANT BACKGROUND**

Ms. Jamal is a transgender woman who began her employment with SAKS in April 2011 in Katy, Texas, and transferred to a Houston SAKS store as a selling associate in March 2012. *See* ECF No. 1, Plaintiff's Original Complaint ("Compl."), ¶¶ 8, 9, 22, 29. While employed at the Houston store, Ms. Jamal alleges that she was harassed and discriminated against based on her gender, gender identity, and gender expression, and was retaliated against for complaining about the discrimination and harassment. *Id.* at ¶¶ 29, 33, 66, 71, 84. Ms. Jamal claims discrimination and harassment by coworkers and managers alike and has pled specific facts in support of her allegations. *Id.* at ¶ 33.

For example, the complaint states that a SAKS manager told Ms. Jamal to "change her appearance to a more masculine one, stating that she should separate her home life from work life." *Id.* at ¶ 31. On more than one occasion, according to the complaint, different managers ordered Ms. Jamal not to wear makeup or "feminine-style clothing." *Id.* at ¶ 32. Ms. Jamal's requests that she be referred to using female pronouns were not honored, and she was repeatedly referred to by male pronouns. Compl., ¶¶ 27-29, 35, 37, 39, 40, 42.

One of Ms. Jamal's co-workers allegedly used derogatory language when discussing her in front of customers, referring to her as a prostitute. *Id.* at ¶ 34. Per the complaint, a second

coworker threatened to beat up Ms. Jamal and rip out "his" hair extensions, while yet a third coworker stated that he did not like the way "he," referring to Ms. Jamal, acts. *Id.* at ¶¶ 37, 39. Ultimately, SAKS fired her. In short, Ms. Jamal alleges she was terminated because of her gender, gender identity, gender expression, and in retaliation for engaging in protected activity (*i.e.*, filing an EEOC charge of discrimination just ten days before SAKS terminated her). *Id.* at ¶¶ 66, 85.

On September 30, 2014, Ms. Jamal filed a complaint in this Court alleging, *inter alia*, sex discrimination under Title VII. *Id*. at ¶¶ 64, 66, 71. On December 29, 2014, SAKS filed its Motion to Dismiss. In the Motion, among other things SAKS argues that Ms. Jamal's Title VII sex discrimination claim should be dismissed because transgender individuals cannot bring viable sex discrimination claims under Title VII. Motion, pp.1-2.

## II.   ARGUMENT

### A.   Title VII Protects All Persons, Including Transgender Individuals, Against Sex Discrimination In Employment

Ms. Jamal alleges that she was subjected to discrimination and harassment because of her sex, in violation of Title VII. *See* Compl., ¶¶ 64, 66, 71. Under Title VII, it is "an unlawful employment practice for an employer to … discriminate against *any* individual with respect to [her] compensation, terms, conditions, or privileges of employment, because of such individual's … sex." 42 U.S.C. § 2000e-2(a)(1) (emphasis added). The plain language of the statute thus affirms that Title VII protects all individuals from sex discrimination, including transgender individuals. *Cf. United States v. Gonzales*, 520 U.S. 1, 5 (1997) ("Read naturally, the word 'any' has an expansive meaning, that is, 'one or some indiscriminately of whatever kind.'") (quoting Webster's Third New International Dictionary 97 (1976)). The Supreme Court has made clear

4

that Title VII must be interpreted according to its plain text. *Oncale v. Sundowner Offshore Servs.*, 523 U.S. 75, 79 (1998).

Ms. Jamal, like all other individuals who work for covered employers such as SAKS, is therefore protected against sex discrimination. Her status as a transgender woman does not remove her from Title VII's ambit.

### B. Title VII's Prohibition Against Sex Discrimination Prohibits Discriminating Against An Individual Based On That Individual's Gender Identity

In its Motion, SAKS maintains that Ms. Jamal cannot prevail on a Title VII sex discrimination claim that is based on her gender identity, particularly her transgender status. Not so. Discrimination against an individual based on gender identity is discrimination because of sex.

First and foremost, as the EEOC has made clear, "[w]hen an employer discriminates against someone because the person is transgender, the employer has engaged in disparate treatment 'related to the sex of the victim.'" *Macy*, 2012 WL 1435995, at *7. By its very terms, Title VII prohibits discrimination "because of sex;" and discrimination "because of" a protected characteristic includes discrimination based on an employer's perception that an individual has changed, or is attempting to change, the characteristic. *Schroer v. Billington*, 577 F. Supp. 2d 293, 307 (D.D.C. 2008) (*Schroer III*). Thus, discrimination against individuals because they have undertaken a gender transition is just as much sex discrimination as it would be prohibited religious discrimination under Title VII to penalize someone for converting from one religion to another. To illustrate, the *Schroer III* court offers the following analogy:

> Imagine that an employee is fired because she converts from Christianity to Judaism. Imagine too that her employer testifies that he harbors no bias toward either Christians or Jews but only "converts." That would be a clear case of discrimination "because of religion." No court would take seriously the notion that "converts" are not covered by the statute. Discrimination "because of

5

religion" easily encompasses discrimination because of a *change* of religion. *Id.* at 306-07 (emphasis in original). Focusing on a "label" like "transsexual" as a justification for denying protection under Title VII, the court continued, would be "blind" to the "statutory language itself." *Id.* at 307; *see also Macy*, 2012 WL 1435995, at *11 (applying *Schroer*) and *Rentos* v. *OCE-Office Sys.*, No. 95-civ-7908, 1996 WL 737215, at *8-9 (S.D.N.Y. Dec. 24, 1996) (denying employer's motion to strike a transgender plaintiff's sex discrimination claim alleging disparate treatment due to her "sex background and subsequent change").

Further, because an individual's gender identity[3] is simply one aspect of an individual's sex, discrimination on the basis of an individual's gender identity—including the fact that an individual's gender identity differs from other aspects of an individual's sex—is also necessarily discrimination because of sex. As the trial court in *Ulane* v. *Eastern Airlines, Inc.*, 581 F. Supp. 821 (N.D. Ill. 1983) (*Ulane I*) explained, "sex is not a cut-and-dried matter of chromosomes." *Id.* at 825. Therefore, the court concluded that "the term, 'sex'" applied both "literally" and "scientifically" to transgender individuals. *Id.*[4] *See also Schroer* v. *Billington*, 424 F. Supp. 2d

---

[3] One's gender identity is one's "'internal sense of being male or female.'" DOJ Mem., p.1 n.1 (citation omitted).

[4] In reversing that holding, the Seventh Circuit dismissed the significance of the medical testimony presented to the trial judge and ruled based on its view that Congress did not intend to proscribe discrimination against transgender individuals. *Ulane v. Eastern Airlines, Inc.*, 742 F.2d 1081, 1086 (7th Cir. 1984) (*Ulane II*) ("We do not believe that the interpretation of the word 'sex' as used in the statute is a mere matter of expert medical testimony or the credibility of witnesses produced in court."). Instead, the Seventh Circuit emphasized that "Congress never considered nor intended that this 1964 legislation apply to anything other than the traditional concept of sex." *Id.* at 1085. As we explain *infra*, however, the Supreme Court later squarely rejected the idea that a particular form of sex discrimination lies outside Title VII because it was "assuredly not the principal evil Congress was concerned with when it enacted Title VII." *Oncale v. Sundowner Offshore Servs., Inc.,* 523 U.S. 75, 79 (1998).

Even the Tenth Circuit, which ultimately refused to hold that transgender individuals are a protected class under Title VII, acknowledged "[s]cientific research may someday cause a shift in the plain meaning of the term 'sex' so that it extends beyond the two starkly defined categories of male and female." *Etsitty v. Utah Transit Auth.*, 502 F.3d 1215, 1222 (10th Cir.

203, 212-13 (D.D.C. 2006) (*Schroer I*); *Schroer III*, 577 F. Supp. 2d at 306. In fact, after a full trial on the question, the *Schroer* district court specifically referenced the expert testimony and noted that "it has long been accepted in the relevant scientific community that there are nine factors that constitute a person's sex[.]" *Id.* For this reason as well, it is a better reading of the statute to treat Title VII's prohibition on sex discrimination as encompassing discrimination on the basis of gender identity.

Contrary to what SAKS claims, Title VII's "because of…sex" prohibitions do not, expressly or otherwise, exclude transgender individuals. The suggestion that "Title VII only prohibits discrimination against men because they are men, and discrimination against women because they are women, represent[s] an elevation of 'judge-supposed legislative intent over clear statutory text.'" *Id.* at 307 (quoting *Zuni Pub. Sch. Dist. No. 89 v. Dep't of Educ.*, 550 U.S. 81, 108 (2007) (Scalia, J., dissenting)). And as the Supreme Court explained in *Oncale* – where it held that same-sex sexual harassment is actionable under Title VII – "[s]tatutory prohibitions often go beyond the principal evil to cover reasonably comparable evils, and it is ultimately the provisions of our laws rather than the principal concerns of our legislators by which we are governed." 523 U.S. at 79; *see also Price Waterhouse v. Hopkins*, 490 U.S. 228, 251 (1989) (through Title VII, "Congress intended to strike at the entire spectrum of disparate treatment of men and women resulting from sex stereotypes") (quoting *Los Angeles Dep't of Water & Power v. Manhart*, 435 U.S. 702, 707 n.13 (1978))).

Even before *Macy*'s unequivocal decision on the issue of Title VII's coverage of discrimination claims by transgender individuals, the Sixth Circuit in *Smith v. City of Salem*, 378

---

2007) (citing *Schroer I*). As we explain on pages 5-9 of this Statement of Interest, the United States disagrees with the Tenth Circuit's analysis limiting the breadth of Title VII's protections.

F.3d 566, 574-75 (2004), recognized that an employer's preferring or insisting that an employee's gender identity or expression "match"—or conform with—the actual or perceived sex assigned at birth is sex discrimination. In *Smith*, the Sixth Circuit held that the plaintiff firefighter, who transitioned from male to female, had stated a cause of action under Title VII because "discrimination against a plaintiff who is a transsexual—and therefore fails to act and/or *identify* with his or her gender—is discrimination based on sex." *Id.* at 575 (emphasis added). Similarly, in reaching its ultimate conclusion that "discrimination against a transgender individual because of her gender-nonconformity is sex discrimination," within the meaning of the Fourteenth Amendment, the Eleventh Circuit quoted with approval the conclusion that "neither a woman with male genitalia nor a man with stereotypically female anatomy, such as breasts, may be deprived of a benefit or privilege of employment by reason of that non conforming trait." *Glenn v. Brumby*, 663 F.3d 1312, 1317 (11th Cir. 2011) (quoting *Kastl v. Maricopa Cnty. Comm. Coll. Dist.*, No. 02-1531, 2004 WL 2008954, at *2-3 (D. Ariz. June 3, 2004), *aff'd* 325 Fed. Appx. 492 (9th Cir. 2009)).

In one way or another, each of these cases recognizes that it would be illogical to immunize a defendant from liability merely because the defendant "superimpose[s]" a "transgender status" on that person so as to "legitimize discrimination based on the plaintiff's gender non-conformity by formalizing the non-conformity into an ostensibly unprotected classification." *Smith*, 378 F.3d at 574-75. SAKS's attempt to rely on this long discredited argument should be rejected. *See also Schroer III*, 577 F. Supp. 2d at 307 (finding that the analysis used by courts holding that changing one's sex is not discrimination because of sex "is no longer a tenable approach to statutory construction").

Courts recognize (as detailed below) that transgender individuals may prevail on Title VII sex discrimination claims by relying on evidence of sex stereotyping, but as the EEOC has explained, "evidence of gender stereotyping is simply one means of proving sex discrimination" that is available to transgender individuals. *Macy*, 2012 WL 1435995, at *10. Discrimination against a transgender individual is sex discrimination "regardless of whether an employer discriminates against an employee because the individual has expressed his or her gender in a non-stereotypical fashion, because the employer is uncomfortable with the fact that the person has transitioned or is in the process of transitioning from one gender to another, or because the employer simply does not like that the person is identifying as a transgender person." *Id.* at *7. When the complainant in *Macy* alleged that the respondent was willing to hire her when it viewed her as a man, but not when it learned that she identified as a woman, no additional evidence regarding stereotyping was necessary to demonstrate that such action was, as Title VII plainly proscribes, based on sex. *Id.*

As the foregoing analysis makes clear, Title VII's prohibition on discrimination because of sex, properly understood, encompasses discrimination against an individual because she is transgender.

      **C.**      **Title VII's Prohibition Against Sex Discrimination Prohibits Discriminating Against An Individual, Including A Transgender Individual, On The Basis Of Sex Stereotypes**

SAKS's position that transgender employees should be afforded no protection under Title VII is also contrary to the great weight of authority, from across the country, that has affirmatively recognized that transgender individuals may bring sex-based Title VII claims where there is discrimination based on gender stereotyping.

9

In *Price Waterhouse*, the Supreme Court found that Title VII's prohibition of discrimination "because of … sex" means "that gender must be irrelevant to employment decisions." 490 U.S. at 240. As a result, the Court held that discrimination based on one's failure to conform to gender stereotypes is discrimination because of sex. *Id*. at 250-51. In that case, Ann Hopkins alleged that she had been denied partnership in an accounting firm at least in part because the partners considered her too "macho." *Id*. at 235. In phrases that echo the comments allegedly made to Ms. Jamal, the partner who informed Hopkins of the decision to place her candidacy on hold told her that she should "walk more femininely, talk more femininely, dress more femininely, wear make-up, have her hair styled, and wear jewelry," if she wanted to advance at the organization. *Id.* Another partner advised Hopkins to take "a course at charm school." *Id*. The Court explained that Hopkins had met her burden of showing "that the employer relied upon *sex-based considerations* in coming to its decision," *id*. at 241-42 (emphasis added), and that "we are beyond the day when an employer could evaluate employees by assuming or insisting that they matched the stereotype associated with their group . . .", *id*. at 251 (internal citations omitted).

Notably, the Fifth Circuit, in *EEOC v. Boh Brothers Constr. Co.*, 731 F.3d 444, 454 (5th Cir. 2013), has recognized that, under *Price Waterhouse*, sex-stereotyping evidence may be used to establish a Title VII claim where there is a perception that a plaintiff does not "conform to traditional gender stereotypes." Thus, as Judge Dennis has explained, "Title VII's prohibition on harassment because of sex is aimed at affording equal opportunity for workers to thrive in the marketplace based on their abilities and without respect to gender identity." *Carmichael v. Galbraith*, 574 Fed. Appx. 286, 294 (5th Cir. 2014) (concurring opinion).

Since *Price Waterhouse*, while the issue has arisen in a variety of contexts, no court of appeals has categorically denied protections against sex discrimination to transgender individuals. To the contrary, the First, Sixth, Ninth, and Eleventh Circuits have all recognized that a transgender plaintiff may rely on sex-stereotyping evidence to establish discrimination. And two other Circuits—the Third and the Tenth—have assumed as much, without squarely deciding the issue.

In *Glenn*, an employment case brought directly under the Fourteenth Amendment's equal protection clause, the Eleventh Circuit found that the termination of the plaintiff, based on the employer's perception of her as "a man dressed as a woman and made up as a woman" was sex-based discrimination. 663 F.3d at 1320-21. The court held that "[a]ll persons, whether transgender or not, are protected from discrimination on the basis of gender stereotype. . . . Because these protections are afforded to everyone, they cannot be denied to a transgender individual." *Id.* at 1318-19. The court observed that its conclusion that the plaintiff's discharge was sex discrimination would have been the same under Title VII, noting that "[i]f this were a Title VII case, the analysis would end here." *Id.* at 1321.

A similar analysis has been applied in Title VII cases. Most notably, in *Smith*, the Sixth Circuit held that the discrimination against the transgender plaintiff "is no different from the discrimination directed against [the plaintiff] in *Price Waterhouse* who, in sex-stereotypical terms, did not act like a woman." *Smith*, 378 F.3d at 575. The court emphasized that treatment "based on a person's gender non-conforming behavior is impermissible discrimination, irrespective of the cause of that behavior; a label, such as 'transsexual' is not fatal to a sex discrimination claim where the victim has suffered discrimination because of his or her gender non-conformity." *Id.*; *see also Barnes v. City of Cincinnati,* 401 F3d 729 (6th Cir. 2005)

11

(transgender plaintiff stated claim for sex discrimination based on failure to conform to sex stereotypes).

Two other courts of appeals have implicitly assumed that transgender plaintiffs can use gender stereotyping analysis to bring sex discrimination claims under Title VII. The Third Circuit, in *Stacy v. LSI Corp.*, 544 Fed. Appx. 93 (2013) applied the *McDonnell Douglas* burden-shifting analysis to a transgender plaintiff's Title VII claim of "gender identity discrimination," *id.* at 96, and focused solely on the question whether the defendant's proffered reason for terminating her had been pretextual, *id.* at 97-98. Similarly, the Tenth Circuit, in *Etsitty*, after canvassing the caselaw on sex-stereotyping claims, "assume[d], without deciding, that such a claim is available" to transgender individuals, 502 F.3d at 1224, and also focused on the question of pretext, *id.* at 1224-26.[5]

Federal appeals courts have also held that transgender plaintiffs have stated sex discrimination claims in contexts outside of employment as well. For example, in *Schwenk v. Hartford*, 204 F.3d 1187, 1200-02 (9th Cir. 2000), in the course of addressing a claim brought under the Gender Motivated Violence Act, 42 U.S.C. § 13981,[6] the Ninth Circuit held that the transgender plaintiff's assault was "motivated, at least in part, by Schwenk's gender—in this case, by her assumption of a feminine rather than a typically masculine appearance or demeanor." The Ninth Circuit expressly drew a parallel to Title VII cases, explaining that

---

[5] By contrast, the Tenth Circuit held, as a matter of law, that transgender individuals cannot maintain a Title VII claim based on their gender identity *per se*. *Etsitty*, 502 U.S. at 1221-22. The United States has already explained why that holding is erroneous. *See supra* at pages 5-9.

[6] The Supreme Court later held that in enacting the Act, Congress had exceeded its powers under the Commerce Clause, because the Act targeted noneconomic intrastate activity whose effects on interstate commerce could not be aggregated, and under section 5 of the Fourteenth Amendment, because the Act's civil remedy was not directed solely at state action. *See United States v. Morrison*, 529 U.S. 598 (2000).

"'[S]ex' under Title VII encompasses both sex—that is, the biological differences between men and women—*and* gender. Discrimination because one fails to act in the way expected of a man or woman is forbidden under Title VII." *Schwenk*, 204 F.3d at 1202. Similarly, in *Rosa v. Park W. Bank & Trust Co.*, 214 F.3d 213, 214-15 (1st Cir. 2000), the First Circuit held that a transgender plaintiff had stated a sex discrimination claim under the Equal Credit Opportunity Act when a bank refused to provide her with a loan application because her "traditionally feminine attire" did not "accord" with what was expected of someone of "male gender."

Consistent with the federal appellate courts' decisions on the issue of gender stereotyping, district courts across the country recognize that a transgender individual is protected by Title VII under gender-stereotyping analysis.[7] District courts in the Fifth Circuit are among them. In *Lopez v. River Oaks Imaging & Diagnostic Group., Inc.*, 542 F. Supp. 2d 653 (S.D. Tex. 2008), a transgender female's application for employment was rescinded after the employer conducted a background check that discovered she was biologically male and accused the plaintiff of misrepresenting herself at her interview. The court held that the plaintiff's "transsexuality is not a bar to her sex-stereotyping claim. Title VII is violated when an employer discriminates against any employee, transsexual or not." *Id.* at 660. Likewise, in *Eure v. Sage Corp.*, No. 12cv1119, 2014 WL 6611997 (W.D. Tex. Nov. 19, 2014), which SAKS cites

---

[7] *See, e.g.*, *Tronetti v. TLC Healthnet Lakeshore Hosp.*, No. 03-cv-0375E(SC), 2003 WL 22757935, at *4 (W.D.N.Y. Sept. 26, 2003); *Mitchell v. Axcan Scandipharm, Inc.*, No. Civ.A. 05-243, 2006 WL 456173, at *2 (W.D. Pa. Feb. 17, 2006); *Muir v. Applied Integrated Techs., Inc.*, Civil Action No. DKC 13–0808, 2013 WL 6200178, at *8-10 (D. Md. Nov. 26, 2013); *Hughes v. William Beaumont Hosp.*, No. 13–cv–13806, 2014 WL 5511507, at *13 (E.D. Mich. Oct. 31, 2014); *Creed v. Family Express Corp.*, No. 3:06–CV–465RM, 2009 WL 35237, at *6 (N.D. Ind. Jan. 5, 2009); *Sturchio v. Ridge*, No. CV-03-0025-RHW, 2005 WL 1502899, at *6 (E.D. Wash. June 23, 2005); *Rice v. Deloitte Consulting LLP*, Civil Action No. 12–cv–00253–WYD–KMT, 2013 WL 3448198, at *5 (D. Colo. July 9, 2013); *Chavez v. Credit Nation Auto Sales*, No. 1:13–cv–00312–WSD, 2014 WL 4585452, at *6 (N.D. Ga. Sept. 12, 2014); *Schroer v. Billington*, 525 F. Supp. 2d 58, 62 (D.D.C. 2007).

approvingly, the court concluded that *Price Waterhouse* provides "a vehicle for transgender persons to seek recovery under Title VII." *Id*. at *7.

The cases SAKS cites in support of its position that transgender individuals are not afforded Title VII protection are almost entirely pre-*Price Waterhouse* cases, including *Ulane II*, 742 F.2d 1081, and *Sommers v. Budget Mktg., Inc.*, 667 F.2d 748 (8th Cir. 1982), and cases relying on *Ulane II* and *Sommer*, such as *Oiler v. Winn-Dixie Louisiana, Inc.*, No. 00-314, 2002 WL 31098541 (E.D. La. Sept. 16, 2002). *See* Motion, pp. 3-4. However, "since *Price Waterhouse*, federal courts have recognized with *near-total uniformity* that the approach in *Holloway*, *Sommers*, and *Ulane [II]*. . . has been eviscerated." *Glenn*, 663 F.3d at 1318 n.5 (emphasis added)(ellipses in original); *see also Schroer III*, 577 F. Supp. 2d at 307 (characterizing *Ulane*, *Holloway,* and *Etsitty* as essentially holding "that a thing may be within the letter of the statute and yet not within the statute, because not within its spirit, nor within the intention of its makers," and rejecting this analysis as "no longer a tenable approach to statutory construction"). Those decisions rested explicitly on reasoning that *Price Waterhouse—*and *Oncale—*repudiated. Indeed, more recent decisions from within the Fifth Circuit agree that those earlier cases are fatally undercut by *Price Waterhouse* and have come down the other way. *See, e.g.*, *Eure*, 2014 WL 661997, at *7 n.6; *Lopez*, 542 F. Supp. 2d at 659 n.10.

*Price Waterhouse* makes clear that Title VII prohibits not only discrimination based on the biological aspects of sex, but also discrimination based on non-conformity with gender-based stereotypes. *See Price Waterhouse*, 490 U.S. at 251. And *Oncale*, where the Court held that same-sex sexual harassment is actionable, confirms that Title VII's protections extend beyond forms of discrimination specifically discussed by Congress. *See Oncale*, 523 U.S. at 79-80. Thus, decisions reasoning that transgender individuals may not bring sex discrimination claims

14

because "transgender status" is not specifically listed in Title VII disregard the plain statutory language and conflict with subsequent Supreme Court decisions.

Ms. Jamal's allegations that she was told to dress in a more masculine fashion and ordered not to wear make-up or feminine-style clothing reflect the very same type of sex-stereotyping evidence relied upon by the Supreme Court in *Price Waterhouse* and they are sufficient to proceed past a motion to dismiss in this case.

## III.    CONCLUSION

The United States respectfully requests that the Court hold that Title VII's ban on sex discrimination encompasses discrimination on the basis of gender identity, including transgender status.

Dated:  January 26, 2015

        Respectfully submitted,

        VANITA GUPTA
        Acting Assistant Attorney General
        Civil Rights Division

        DELORA L. KENNEBREW
        Chief
        Employment Litigation Section

        LORI B. KISCH (DC Bar No. 491282)
        TREVOR S. BLAKE (DC Bar No. 974319)
        Special Litigation Counsel
        Employment Litigation Section
        Civil Rights Division
        United States Department of Justice
        601 D Street, NW
        Patrick Henry Building, Room 4605
        Washington, DC  20579
        (202) 305-4422
        (202) 514-1105 (fax)
        Lori.Kisch@usdoj.gov
        Trevor.Blake@usdoj.gov

                    KENNETH MAGIDSON
                    United States Attorney
                    Southern District of Texas

                    /s/  Keith Edward Wyatt_____
                    KEITH EDWARD WYATT
                    Assistant United States Attorney
                    Texas Bar No. 22092900
                    Federal Bar No. 3480
                    1000 Louisiana St., Suite 2300
                    Houston, TX 77002
                    Telephone: (713) 567-9713
                    Fax: (713) 718-3303

## **CERTIFICATE OF SERVICE**

      I hereby certify that a true and correct copy of the Statement of Interest of the United States of America was served, upon all counsel of record, via the Court's Electronic Case Filing (ECF) system on January 26, 2015.

                    /s/  Keith Edward Wyatt_____
                    KEITH EDWARD WYATT
                    Assistant United States Attorney
                    Texas Bar No. 22092900
                    Federal Bar No. 3480
                    1000 Louisiana St., Suite 2300
                    Houston, TX 77002
                    Telephone: (713) 567-9713
                    Fax: (713) 718-3303